■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCUS REINA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Murray, J.), rendered May 14, 1981, convicting him of robbery in the first degree (two counts), assault in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. In the early morning hours of March 15, 1980, a robbery was committed by a group of teenagers on the stairway of a Brooklyn discotheque. One of the perpetrators held the victims at gunpoint as he and his companions stole their jackets, two gold chains and other items. In the course of the robbery, one of the victims was shot in the chest. Subsequently, the defendant was indicted for robbery, assault and criminal possession of a weapon in connection with the incident. The People alleged that defendant had been the one who wielded the gun and fired the shot. The defense contended that the defendant had been misidentified as the perpetrator of a crime he did not commit. This claim rested largely on the fact that, although the identifying witnesses at trial did not recall any facial hair or marks on the perpetrator, the defendant wore a mustache and a small goatee and had a birthmark on his face. The crucial issue, therefore, was identification. After deliberation over the course of two days, the jury resolved the issue against the defendant. We now reverse because we find that the Trial Judge's unwarranted and improper interference with defense counsel's summation deprived the defendant of a fair trial. In his lengthy and detailed summation, defense counsel attempted to persuade the jury that there were a number of areas in which the evidence or lack of evidence gave rise to a reasonable doubt as to the defendant's guilt. His efforts were frequently interrupted, however, by the Trial Judge's interjections which in most instances were not in response to any objection by the prosecutor. Illustrative of the courts *sua sponte* interruptions of counsel's summation are the following excerpts from the record: "MR. ISRAEL [defense counsel]: * * * Reasonable doubt number five, Wayne Meadows also was possibly a stranger to Marcus Reina. He only saw Marcus Reina one time before the night in question. That time was in the summer of 1979 when he saw him for just a few seconds in a park and Marcus Reina did not make a deep impression on him at that time. THE COURT: Sustained. I hate to break into your summation, counsel, but the Court has a duty. It is not and I want the jury to understand and counsel is only suggesting to you that you may find, and these statements counsel is not testifying. And his statement by what was good and what was bad and you should refrain, counsel, from saying what he didn't do, he didn't know. That's what the jury is here for and as to whether or not there are reasonable doubts. You could suggest the jury may find and I want the jury to understand that because I do not wish for your summation to mislead them. *There is no reasonable doubt in this case unless you find it and counsel can not put it in there,* and it is not a matter of law so he is not stating it. It is for you, he may suggest that these areas that you may consider them as to whether they are reasonable doubts. Please keep that in mind. * * * MR. ISRAEL: * * * Area number seven which I submit raises a reasonable doubt to you. What was the state of mind that Mr. Ferguson was in during the occurrence of this incident? Was he calm, relaxed, you know, unhooked up so to speak? I submit he was not. I asked him and he replied that he was in a state of shock. Remember when he saw the gun you can have that read back. He was in a state of shock. Now you think about that. Is somebody in a state of shock operating with his normal features? Is he observing things as you normally would? Does he have the ability to recall as you normally would? I say no. He does not have the ability. He was in a state of

shock to start out with as soon as he saw that gun. Accordingly, he was obviously concentrating on the gun. He was in such a state of shock he never really got a look at the man. THE COURT: Objection sustained. You are characterizing the witness. The Court does not allow you to say that. MR. ISRAEL: I say, Judge, he said he was in a state of shock. THE COURT: Now, you're saying what shock means" (emphasis added). Each of these arguments by counsel was firmly grounded in testimony elicited during the trial. The Judge's comments, however, improperly prevented him from asking the jury to draw reasonable inferences from that evidence. Indeed, at one point, the Judge, *sua sponte,* interjected to characterize counsel's arguments as "these various surmise speculations". In addition, at the very outset of summations, the court cautioned the jury as to the arguments to be made and likened the function of counsel to that of a car salesman touting his product. A closing argument is a basic element of a defense in a criminal trial (see *Herring v New York,* 422 US 853, 858). The right of the defense to make an effective closing argument is substantially impaired when counsel is unjustifiably limited or repeatedly interrupted while making appropriate comment on matters of evidence adduced at trial (see, e.g., *People v Sepulveda,* 44 AD2d 846, 847; *People v Marcelin,* 23 AD2d 368, 370). In the case at bar, the Trial Judge, acting *sua sponte,* frequently interrupted and limited defense counsel when he was legitimately commenting on matters of evidence and disparaged counsel's arguments as surmise and speculation. Under the circumstances of this case, the conduct of the court requires that the judgment be reversed and that the defendant be afforded a new trial. Mollen, P. J., Lazer, Thompson and Gulotta, JJ., concur.